**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE UNITED STATES OF AMERICA and THE STATE OF NEW YORK *ex rel.* MICHELE MARTINHO,<br><br>Plaintiffs,<br><br>v.<br><br>GRAMERCY CARDIAC DIAGNOSTIC SERVICES P.C. and KLAUS PETER RENTROP,<br><br>Defendants. | 18 Civ. 7400 (JMF) |
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>GRAMERCY CARDIAC DIAGNOSTIC SERVICES P.C. and KLAUS PETER RENTROP,<br><br>Defendants. | **STIPULATION AND ORDER OF SETTLEMENT** |

WHEREAS, this Stipulation and Order of Settlement ("Stipulation") is entered into by and among the State of New York (the "State") by the Office of the Attorney General, through the Medicaid Fraud Control Unit ("MFCU"), the relator Michele Martinho ("Relator"), by her authorized representatives; and defendants Gramercy Cardiac Diagnostic Services P.C. ("Gramercy Cardiac") and Dr. Klaus Peter Rentrop ("Rentrop", or, together with Gramercy Cardiac, "Defendants"). The State, Relator, Gramercy Cardiac, and Rentrop shall be collectively referred to as the "Parties."

WHEREAS, Gramercy Cardiac is a New York-based company founded, owned, and controlled by Rentrop, who serves as its President;

WHEREAS, Gramercy Cardiac offers cardiac diagnostic services, including echocardiograms, positron emission tomography ("PET") scans, and single-photon emission computerized tomography ("SPECT") scans, and for many years operated four offices in New York City;

WHEREAS, at all relevant times, Gramercy Cardiac was enrolled as a healthcare provider in New York State's Medical Assistance Program ("Medicaid Program" or "Medicaid") under MMIS No. 02523320;

WHEREAS, the Medicaid Program reimburses enrolled healthcare providers for services rendered to beneficiaries of the program, including healthcare services reimbursed directly by the New York State Department of Health ("NYSDOH") on a fee-for-service basis, and healthcare services reimbursed through Medicaid Managed Care Organizations ("MCOs");

WHEREAS, on or about August 15, 2018, Relator filed a complaint under the *qui tam* provisions of the New York False Claims Act ("NY FCA"), N.Y. State Fin. Law § 187 *et seq.,* as well as the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.,* against Rentrop and Gramercy Cardiac (the "Relator Complaint");

WHEREAS, the State found that from January 1, 2010 through December 31, 2021 (the "Covered Period"), Rentrop and Gramercy Cardiac offered and paid physicians and their practices millions of dollars of remuneration in the form of rent payments and referral fees to induce them to refer patients to Gramercy-contracted cardiologists and to Gramercy Cardiac for diagnostic tests and procedures, in violation of 18 NYCRR § 515.2. The State further alleges that such violations of the AKS render the claims submitted to Medicaid for these tests and procedures false under the NY FCA. In particular, the State alleges that: (a) Rentrop and Gramercy Cardiac entered into office

space rental agreements, often in excess of fair market value, with primary care and other physicians (or their medical practices) in order to induce these physicians to refer patients to Gramercy-contracted cardiologists who used the rented office space; (b) these cardiologists regularly ordered diagnostic tests and procedures that were performed at Gramercy Cardiac; and (c) Rentrop and Gramercy Cardiac paid many of these cardiologists a flat fee for each diagnostic test or procedure the referred patients underwent at Gramercy Cardiac, with larger fees for tests or procedures for which Gramercy Cardiac received larger reimbursements. The conduct described in this paragraph is the "Covered Conduct" for purposes of this Stipulation;

WHEREAS, contemporaneous with the filing of this Stipulation, the United States is filing a Notice of Election to Intervene and Complaint-In-Intervention (the "United States Complaint") and the State is filing a Notice of Election of Partial Intervention for Purposes of Settlement ("State Notice") in the above-referenced *qui tam* action, in which they are collectively asserting claims against Rentrop and Gramercy Cardiac under the FCA, the NY FCA, 42 U.S.C. § 1395nn ("Stark Law"), and the common law for the Covered Conduct;

WHEREAS, Defendants entered into a separate settlement Stipulation with the United States (the "United States Stipulation") to resolve the United States' claims arising from the Covered Conduct, and agreed to pay a total of $4,510,678 to the United States pursuant to the United States Stipulation;

WHEREAS, Rentrop entered into a Voluntary Exclusion Agreement with the Office of Inspector General of the Department of Health and Human Services under which he agreed to be excluded from participation in Medicare, Medicaid, and other federal health care programs for a period of five years from the date of that agreement;

WHEREAS, in connection with the United States' and the State's investigation, Rentrop and Gramercy Cardiac submitted the Financial Statement of Debtor (Form OBD-500) on March

23, 2022 to the United States, and whereas Rentrop and Gramercy Cardiac submitted financial disclosures and supporting documents to the United States, and supplemental supporting materials provided to the United States from time to time in 2022 and 2023 (together, the "Federal Financial Disclosures") whereby Rentrop and Gramercy Cardiac affirmed under penalty of perjury that they lack the assets and ability to make full financial restitution to the State for the losses to the Medicaid Program as a result of the Covered Conduct;

WHEREAS, Rentrop and Gramercy Cardiac hereby swear and affirm that the information in the Federal Financial Disclosures is true and correct and Rentrop and Gramercy Cardiac have not had any material increase in either of their financial net worths since the execution or submission of the Federal Financial Disclosures;

WHEREAS, the Parties agree that State has entered into this Stipulation in reliance upon the representations set forth in the Federal Financial Disclosures;

NOW, THEREFORE, in consideration of the mutual covenants and undertakings set forth herein, the Parties agree as follows:

**TERMS AND CONDITIONS**

1. The Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2. Defendants each admit, acknowledge, and accept responsibility for the following conduct (the "Admitted Conduct"):

   a. From 2010 through 2021, Gramercy Cardiac, at Rentrop's direction, entered into rental agreements (the "Rental Agreements") with more than 130 physicians and medical practices (the "Rental Practices") under which Gramercy Cardiac leased a portion of the practice's office space, usually one or two exam rooms for certain days or hours each month. Rentrop took

part in the negotiation of the Rental Agreements and signed them on behalf of Gramercy Cardiac. Gramercy Cardiac paid a total of more than $11 million to the Rental Practices pursuant to the Rental Agreements.

b. From 2010 through 2021, Gramercy Cardiac, at Rentrop's direction, entered into independent contractor agreements (the "Independent Contractor Agreements") with more than 50 cardiologists (the "Gramercy-Contracted Cardiologists") or their medical practices. Rentrop took part in the negotiation of the Independent Contractor Agreements and signed them on behalf of Gramercy Cardiac.

c. Gramercy Cardiac sent the Gramercy-Contracted Cardiologists to the rented office space one or more times each month to see patients who were referred for an assessment by the healthcare providers at the Rental Practice. The Gramercy-Contracted Cardiologists in turn referred these patients to Gramercy Cardiac to undergo diagnostic tests and procedures, such as PET and SPECT scans. Some of the referred patients were Medicare and Medicaid beneficiaries, and Gramercy Cardiac submitted claims for payment for the care provided to these referred patients.

d. Gramercy Cardiac paid many of the Gramercy-Contracted Cardiologists a flat fee for each diagnostic test or procedure which the cardiologist referred to Gramercy Cardiac provided that the patient received the test or procedure at a Gramercy Cardiac location. These "per procedure" fees were the only compensation Gramercy Cardiac provided to the Gramercy-Contracted Cardiologists.

e. Certain versions of Independent Contractor Agreements stated that the Gramercy-Contracted Cardiologist was to be paid not for the referrals to Gramercy Cardiac, but rather for the "[a]dministration and supervision" of the PET and SPECT scans to be performed at Gramercy Cardiac. However, in many cases the Gramercy-Contracted Cardiologists did not, in fact, administer and supervise the PET and SPECT scans and were nonetheless paid by Gramercy Cardiac based solely on the number of tests and procedures referred.

f. At the time the Rental Agreements were executed, it was understood that the Rental Practices would refer their patients to the Gramercy-Contracted Cardiologists. Indeed, Gramercy Cardiac calculated the number of hours per month that Gramercy Cardiac leased the office space for based on the volume of expected patient referrals.

g. Gramercy Cardiac calculated its return on investment from its Rental Agreements—which it internally referred to as the "efficiency" of the Rental Agreements—by comparing the revenue Gramercy Cardiac generated from the patient referrals to the payments it made to the Rental Practice.

h. According to an internal Gramercy Cardiac document, one of the "[p]rimary responsibilities" of its sales representatives (called "Physician Liaisons") was "obtain[ing] efficiency minimums to ensure continuous profit," and the sales representatives were expected to "[c]onsistently evaluate all contracts to ensure efficiency and profitability." Rental Agreements were supposed to meet an "efficiency minimum" threshold.

i. When a Rental Agreement's return on investment fell below the minimum threshold, Gramercy Cardiac, at Rentrop's direction, would often refuse to pay the Rental Practice the amounts due under the Rental Agreement. In addition, at Rentrop's direction, Gramercy Cardiac Physician Liaisons advised Rental Practice physicians that if the volume of referrals to Gramercy-Contracted Cardiologists did not increase, rent would be decreased or the Rental Agreement would be terminated. Gramercy Cardiac terminated a number of Rental Agreements because the return on investment through patient referrals was too low.

j. When negotiating or re-negotiating the monthly rental payment to be made under a Rental Agreement, Gramercy Cardiac took into account the expected or historic return on investment based on the volume of patient referrals generated from the Rental Practice.

k. The rental fees paid by Gramercy Cardiac under the Rental Agreements were in excess of fair market value for at least some Rental Agreements.

3. Pursuant to this Stipulation and the United States Stipulation, Rentrop and Gramercy Cardiac agree to pay, and the United States and the State have agreed to accept, a total of Six Million Five Hundred Thousand Dollars ($6,500,000.00) (the "Total Settlement Amount").

4. Of the Total Settlement Amount, Rentrop and Gramercy Cardiac shall pay to the State a total of One Million Nine Hundred Eighty Nine Thousand Three Hundred Sixty Two Dollars ($1,989,362) ("State Settlement Amount") for damages to the Medicaid Program, plus interest at a rate of 3% per annum from the Effective Date of this Stipulation (as defined in Paragraph 40 below) to the date of the final payment by electronic funds transfer pursuant to written instructions to be provided by MFCU, pursuant to the conditions set forth below:

a. Within fourteen (14) business days of the Effective Date, Defendants shall pay the State the sum of $1,071,195.

b. Within twelve (12) months of the Effective Date, Defendants shall pay the State the sum of $612,111.

c. Within twenty-four (24) months of the Effective Date, Defendants shall pay the State the sum of $306,056.

5. Of the State Settlement Amount, Nine Hundred and Ninety-Four Thousand Six Hundred Sixty-One dollars ($994,661.00) is restitution. Defendants are jointly and severally liable to the State for the State Settlement Amount.

6. Upon the State's receipt of the State Settlement Amount, pursuant to its obligations under State Fin. Law § 190(6)(a), the State shall pay Relator a share in the amount of 22% ($437,659.64) (the "Relator's Share"). The State's obligation to pay the full Relator's Share is conditioned upon the State's receipt of full payment of the State Settlement Amount. The State Settlement Amount does not include Relator's reasonable expenses, attorneys' fees and costs pursuant to State Fin. Law § 190(6), which shall be paid separately by Rentrop and Gramercy Cardiac to Relator.

7. Defendants shall execute and agree to the entry of a consent judgment in favor of the State and against the Defendants in the amount of $26,425,040.69, a copy of which is attached hereto as Exhibit A (the "Consent Judgment"). The State may use the Consent Judgment to obtain a security interest in any asset or property of the Defendants but shall not perfect or execute upon such security interest or engage in any other collection activity with respect to the Consent Judgment so long as Defendants fully comply with the terms of this Stipulation.

8. By December 31, 2023, Rentrop shall no longer have any ownership interest in, or any control over, the operations of Gramercy Cardiac. This date may be extended upon the written

consent of the United States and the State. In the event that Gramercy Cardiac or any of its assets are sold or otherwise transferred or assigned for value, Defendants shall pay to the State twenty-eight percent (28%) of the net proceeds of any such sale, transfer or assignment within thirty (30) days. Under this Stipulation, net proceeds is defined as all proceeds, excluding reasonable transfer, sale, or assignment costs, such as liens, judgments, broker fees, attorneys' fees, debts, and bank or lender fees (not including any liabilities to Rentrop or any entity owned or operated by Rentrop).

9. Following the Effective Date, Rentrop shall neither work for, as a salaried employee, as a consultant, as a volunteer, or otherwise, nor accept any payments, direct or indirect, from: (a) Gramercy Cardiac, any successors, transferees, or assigns of Gramercy Cardiac, or any entity operating out of Gramercy Cardiac's current or former office space at 131 West 35th Street (the "Premises") (a "Gramercy-Related Entity"); or (b) any entity that receives funds from a federal health care program. Notwithstanding the forgoing, nothing in this provision shall be deemed to prevent Rentrop from:

a. selling Gramercy Cardiac;

b. renting the Premises to any entity, provided the monthly rent paid by the entity does not exceed the lesser of (i) the monthly amount paid by Rentrop (A) under the mortgage and construction loans secured by the Premises as of the Effective Date and (B) for the reasonable costs of maintaining the imaging equipment at the Premises, or (ii) $70,000 per month; or

c. provided that the services are rendered on a voluntary and unpaid basis and are performed for an entity that is not a Gramercy-Related Entity, from (i) conducting medical research, (ii) teaching medical students, or (iii) reading cardiac-related tests and writing related reports, provided that the entity that

administered the test or requested the report does not seek reimbursement or payment for the test or report.

10. Rentrop and Gramercy Cardiac will not submit any insurance claims, including indemnification, for the Covered Conduct.

11. Should Defendants comply fully with the payment schedule set forth in Paragraph 4 above as well as the other terms of this Stipulation, the Consent Judgment shall be deemed to be satisfied in full and, upon Defendants' request, the State shall file with the Clerk of the Court and deliver to Defendants a Full Satisfaction of Judgment. In the event that Defendants fully pay the Settlement Amount faster than as provided in the payment schedule set forth in Paragraph 4 above, and fully comply with all other terms of the Stipulation, the Consent Judgment shall be deemed to be satisfied in full and, upon Defendants' request, the State shall file with the Clerk of the Court and deliver to Defendants a Full Satisfaction of Judgment. Should Defendants fail to comply fully with the payment schedule set forth in Paragraph 4 above or any other term of this Stipulation, Defendants shall be in default of this Stipulation, in which case the State may take any of the actions set forth in Paragraph 18 below.

12. Subject to the exceptions in Paragraph 17 (concerning reserved claims) below and subject to Paragraph 18 (concerning default) and Paragraph 24 (concerning bankruptcy proceedings) below, and Paragraph 25 (concerning disclosure of financial information) below, and conditioned on Defendants' full compliance with the terms of this Stipulation, including the State's receipt of the State Settlement Amount, the State releases Defendants from any civil monetary causes of action that the State has for the Covered Conduct under the New York State False Claims Act, N.Y. State Fin. Law §§ 187 *et seq*., Social Services Law § 145-b(2), Executive Law §§ 63-c(1) and 63(12), and the common law theories of fraud in the inducement, payment by mistake, unjust enrichment, fraud, and breach of contract. For avoidance of doubt, this Stipulation does not

release any current or former officer, director, employee, or agent of Gramercy Cardiac (other than Rentrop) from liability of any kind.

13. Defendants fully and finally release the State, its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the State, its agencies, officers, agents, employees, and servants, related to the Covered Conduct, and the State's investigation, prosecution, and settlement thereof.

14. Subject to the exceptions in Paragraph 17 (concerning reserved claims) below and subject to Paragraph 18 (concerning default) and Paragraph 24 (concerning bankruptcy proceedings) below, and Paragraph 25 (concerning disclosure of financial information) below, and conditioned on Defendants' full compliance with the terms of this Stipulation, including full payment of the State Settlement Amount to the State pursuant to Paragraph 4 above, Relator, for herself and her successors, heirs, attorneys, agents, and assigns, releases Defendants from any and all manner of claims, proceedings, liens, and causes of action of any kind or description that Relator has against Defendants related to or arising from the Relator Complaint; provided, however, that nothing in this Stipulation shall preclude Relator from seeking to recover her reasonable expenses and attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d).

15. Conditioned upon Relator's receipt of the payment described in Paragraph 6, Relator, her heirs, successors, attorneys, agents, and assigns, hereby waives, discharges and fully releases the State, its agencies, officers, political subdivisions, employees, servants and agents, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Relator has asserted, could have asserted or may assert in the future on behalf of the State, its agencies, officers, political subdivisions, employees, servants and agents, arising

from the Covered Conduct, or the allegations in Relator's Complaint under State Fin. Law §§ 187 et seq., and from any claim to an additional share of the proceeds of the State Settlement Amount.

16. In consideration of the execution of this Stipulation by Relator and the Relator's release as set forth in Paragraph 14 above, Defendants release Relator and her successors, heirs, attorneys, agents, and assigns, from any and all manner of claims, proceedings, liens, and causes of action of any kind or description that Defendants have against Relator related to or arising from the Relator Complaint.

17. Notwithstanding the release given in Paragraph 12 of this Stipulation, or any other term of this Stipulation, the State specifically does not release any person or entity from any of the following liabilities:

a. Any civil, criminal or administrative liability arising under state revenue codes;

b. Any criminal liability;

c. Any liability of individuals other than Rentrop;

d. Any administrative liability, including mandatory or permissive exclusion from the State's Medicaid Program;

e. Any civil or administrative liability that Rentrop and Gramercy Cardiac have or may have to the State or to individual consumers or state program payors under any statute, regulation or rule not expressly covered by the release in Paragraph 12 above, including but not limited to, any and all claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws;

f. Any liability to the State (or its agencies) for any conduct other than the Covered Conduct;

g. Any liability for personal injury, patient abuse or neglect arising from the Covered Conduct;

h. Any liability that may be asserted by or on behalf of any payor or insurer paid by the State's Medicaid program on a capitated basis, other than liability of Rentrop and Gramercy Cardiac to the State for the Covered Conduct; and

i. Any liability based upon obligations created by this Stipulation.

18. The State Settlement Amount represents the amount the State is willing to accept in compromise of its civil claims arising from the Covered Conduct, due solely to Defendants' financial condition as reflected in the Federal Financial Disclosures referenced in Paragraph 25. Defendants shall be in default of this Stipulation if Defendants fail to pay the State Settlement Amount as provided in the payment schedule set forth in Paragraph 4 above or if they fail to comply materially with any other term of this Stipulation that applies to them ("Default"). The State will provide a written Notice of Default to Defendants of any Default in the manner set forth in Paragraph 39 below. Defendants shall then have an opportunity to cure the Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due as set forth in Paragraph 4 and paying any additional interest accruing under the Stipulation up to the date of payment. If Defendants fail to cure the Default within seven (7) calendar days of receiving the Notice of Default and in the absence of an agreement with the State to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the State Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance). In the event of an Uncured Default, the State may initiate a collection action or take any other action with respect to the unpaid portion of the amount

specified in the Consent Judgment attached hereto as Exhibit A. Defendants also agree that the State, at its sole discretion, may (i) retain any payments previously made, rescind this Stipulation, and reinstate the claims asserted against Defendants in the United States' Complaint or bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraph 12 above, with any recovery reduced by the amount of any payments previously made by Defendants to the State under this Stipulation; (ii) take any action to enforce this Stipulation in a new action or by reinstating the United States' Complaint; (iii) offset the remaining unpaid balance from any amounts due and owing to Defendants and/or affiliated companies by any department, agency, or agent of the State at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. The State shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the State pursues a collection action, Defendants agree immediately to pay the State the greater of (i) a ten-percent (10%) surcharge of the amount collected, or (ii) the State's reasonable attorneys' fees and expenses incurred in such an action. In the event that the State opts to rescind this Stipulation pursuant to this paragraph, Defendants waive and agree not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that (i) are filed by the State against Defendants within 120 days of written notification that this Stipulation has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on August 15, 2018. Defendants agree not to contest any offset, recoupment, and/or collection action undertaken by the State pursuant to this paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the State.

19. Defendants agree not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any finding in this Stipulation or creating the impression that this Stipulation is without factual basis. Nothing in this Paragraph affects Defendants' (a) testimonial obligations or (b) right to take contrary legal or factual positions in defense of litigation or other proceedings to which the Attorney General is not a party.

20. Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Stipulation; Relator agrees and confirms that the terms of this Stipulation are fair, adequate, and reasonable under all the circumstances, pursuant to State Fin. Law § 190(5)(b)(ii).

21. Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Stipulation from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

22. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

23. In exchange for valuable consideration provided in this Stipulation, Defendants acknowledge the following:

a. Defendants have reviewed their financial situation and warrant that they are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the State of the State Settlement Amount.

b. In evaluating whether to execute this Stipulation, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c. The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d. The Parties do not intend to hinder, delay, or defraud any entity to which Defendants was or became indebted on or after the date of any transfer contemplated in this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

24. If within ninety-one (91) days of the date of this Stipulation or any payment made under this Stipulation, Defendants commence any case, action, or other proceeding under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors or a third party commences any case, action, or other proceeding under any law related to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking an order for relief of Defendants' debts, or to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants for all or part of Defendants' assets, Defendants agree as follows:

a. Defendants shall provide MFCU immediate notice at the address contained in Paragraph 39 herein;

b. Payment of the State Settlement Amount shall be accelerated and the full amount deemed due and owing;

c. Defendants' obligations under this Stipulation may not be avoided pursuant to 11

U.S.C. § 547, and they shall not argue or otherwise take the position in any such case, action, or proceeding that (i) their obligations under this Stipulation may be avoided under 11 U.S.C. § 547; (ii) they were insolvent at the time this Stipulation was entered into; or (iii) the mutual promises, covenants, and obligations set forth in this Stipulation do not constitute a contemporaneous exchange for new value given to Defendants.

d. If Defendants' obligations under this Stipulation are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the State, at its option, may rescind the releases in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraph 12 above. Defendants agree that; any such claim, action, or proceeding brought by the State would not be subject to an "automatic stay" pursuant to 11 U.S.C. § 362 (a) as a result of the case, action, or proceeding described in the first sentence of this Paragraph, and Rentrop and Gramercy Cardiac shall not argue or otherwise contend that the State's claim, action, or proceeding is subject to an automatic stay;

e. Rentrop and Gramercy Cardiac shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any claim, action, or proceeding that is brought by the State within 60 calendar days of written notification to Rentrop and Gramercy Cardiac that the releases have been rescinded pursuant to this Paragraph; and

f. the State has a valid claim against Rentrop and Gramercy Cardiac in the amount of the State Settlement Amount and the State may pursue its claim in the case,

action, or proceeding described in the first sentence of this Paragraph, as well as in any other case, action, or proceeding.

g. Rentrop and Gramercy Cardiac acknowledge that the Stipulations in this Paragraph are provided in exchange for valuable consideration provided in this Stipulation.

25. Defendants have each provided the Federal Financial Disclosures to the United States and the State, and the State has relied on the accuracy and completeness of those Federal Financial Disclosures in entering into this Stipulation. Defendants warrant that the Federal Financial Disclosures are complete, accurate, and current. If the State learns of asset(s) in which either Defendant had an interest at the time of the execution of this Stipulation that were not disclosed in the Federal Financial Disclosures, or if the State learns of any false statement or misrepresentation by either Defendant on, or in connection with, the Federal Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth of either Defendant as reflected in the Federal Financial Disclosures by $100,000 or more, the State may at its option: (a) rescind this Stipulation and reinstate its lawsuit based on the Covered Conduct, or (b) let the Stipulation stand and collect the full State Settlement Amount plus one hundred percent (100%) of the net value of that Defendant's previously undisclosed assets. Defendants agree not to contest any collection action undertaken by the State pursuant to this provision, and agree that they will immediately pay the State the greater of (i) a ten-percent (10%) surcharge of the amount collected in the collection action or (ii) the State' reasonable attorneys' fees and expenses incurred in such an action. In the event that the State pursuant to this paragraph rescinds this Stipulation, Defendants waive and agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the State within 120 calendar days of written

notification to Defendants that this Stipulation has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on August 15, 2018.

26. The State Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicaid contractor or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicaid contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

27. Defendants agree to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-6; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, including their present or former officers, directors, employees, shareholders. and agents in connection with:

(1) the matters covered by this Stipulation;

(2) The State's audit(s) and civil and any criminal investigation(s) of the matters covered by this Stipulation;

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the State's audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Stipulation (including attorneys' fees);

i. the negotiation and performance of this Stipulation; and

(4) any payment Defendants make relating to this Stipulation and any payment Defendants may make to Relator, including expenses, costs and attorneys' fees;

are unallowable costs for government contracting purposes and under the Medicaid Program (hereinafter referred to as "Unallowable Costs").

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for in non-reimbursable cost centers by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any Consolidated Fiscal Report ("CFR"), cost report, cost statement, information statement, or payment request submitted by Defendants or any of their affiliates to the Medicaid Program.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Stipulation, Defendants shall endeavor in good faith to identify to applicable Medicaid fiscal agents, any Unallowable Costs (as defined in Paragraph 27(a)) included in payments previously sought from any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the State, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost

reports, information reports, cost statements, or requests for payment. Any payments due after the adjustments have been made shall be paid to the State. The State reserves its rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Defendants; or any of its subsidiaries' or affiliates' CFRs, cost reports, cost statements, or information reports, appeals, or other payment requests. If the State does disagree with any calculations submitted by Rentrop, Gramercy Cardiac, or any of their affiliates as outlined above, then the State and Rentrop and Gramercy Cardiac shall confer in good faith in an effort to come to a resolution regarding such calculations. In the event that a resolution cannot be reached, the State reserves its rights to take any action it deems appropriate.

d. Nothing in this Stipulation shall constitute a waiver of the rights of the State to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

28. This Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity except as otherwise provided herein.

29. Nothing in this Stipulation constitutes an agreement by the State concerning the characterization of any of the relevant statutes or regulations, and the Stipulation shall not be construed as an admission by the State as to any contested issue encompassed by the State's investigation.

30. This Stipulation relates solely to Medicaid compensation paid to, claimed, or received by Rentrop and Gramercy Cardiac pursuant to any statutes, rules, regulations, and official directives

governing Medicaid payments with respect to the Covered Conduct, and not to any other relationship between Rentrop and Gramercy Cardiac and the State or Rentrop and Gramercy Cardiac and any other government-funded healthcare program.

31. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation; provided, however, nothing in this Stipulation shall preclude Relator from seeking to recover his expenses or attorneys' fees and costs from Defendants, pursuant to 31 U.S.C. § 3730(d).

32. Rentrop and Gramercy Cardiac waive any claim for any tax rebate or refund, or other governmental payment, from the State, until the State Settlement Amount is satisfied. In the State's sole discretion, the State may recoup or offset any such payment without further notice to Rentrop and Gramercy Cardiac for credit toward the State Settlement Amount.

33. Any failure by the State to insist upon the strict performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the State, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Stipulation. The undersigned represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

34. This Stipulation is governed by the laws of the State of New York. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

35. This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof. This Stipulation may not be amended except by written

consent of the Parties. No prior agreements, oral representations or statements shall be considered part of this Stipulation.

36. This Stipulation is binding on Defendants' successors, transferees, heirs, and assigns.

37. This Stipulation is binding on Relator's successors, transferees, heirs, and assigns.

38. This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. Emails that attach signatures in PDF form or facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

39. All payments due to the State hereunder shall be made by certified check, bank check, money order, or wire transfer payable to the "New York State Medicaid Fraud Control Restitution Fund." All non-electronic payments shall be delivered to the Medicaid Fraud Control Unit, Finance Department, 13th Floor, 28 Liberty Street, New York, New York 10005. Any other notices pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery, express courier and/or email followed by postage prepaid first-class mail, and addressed as follows:

TO THE STATE:

Chief, Civil Enforcement Division
Medicaid Fraud Control Unit
New York State Office of the Attorney General
28 Liberty Street, 13th Floor
New York, NY 10005
Telephone: (212) 417-5300
MFCUNotices@ag.ny.gov

TO DEFENDANT RENTROP AND DEFENDANT GRAMERCY CARDIAC:

Jeffrey C. Hoffman
Gabriel Altman
Windels Marx Lane & Mittendorf, LLP

156 West 56th Street
New York, New York 10019
jhoffman@windelsmarx.com
galtman@windelsmarx.com

TO RELATOR:

Randall M. Fox
Kirby McInerney LLP
250 Park Avenue, Suite 820
New York, New York 10177
rfox@kmllp.com

40. The effective date of this Stipulation is the date upon which the Stipulation is approved by the Court (the "Effective Date").

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

**WHEREFORE,** the Parties have read the foregoing Stipulation and accept and agree to the provisions contained herein and hereby have caused this Stipulation to be signed as of the day and date adjacent to their signature.

**THE STATE OF NEW YORK**

LETITIA JAMES
*Attorney General of the State of New York*

By: Hillary Gray Chapman Dated: September 15, 2023

Hillary Gray Chapman
Special Assistant Attorney General
Medicaid Fraud Control Unit
28 Liberty Street
New York, New York 10005
Tel: (212) 417-5305
E: hillary.chapman@ag.ny.gov

**RELATOR**

Carvoeiro, Portugal
Dated: ~~New York, New York~~
August 29, 2023

MICHELE MARTINHO

Michele Martinho
Relator

Dated: New York, New York
Aug. 29, 2023

KIRBY MCINERNEY LLP

By:
Randall M. Fox
250 Park Avenue, Suite 820
New York, New York 10177
212-371-6600
rfox@kmllp.com
*Attorney for Relator*

**DEFENDANTS**

Dated: 9/6, 2023

DEFENDANT DR. KLAUS PETER RENTROP

_______________________
Klaus Peter Rentrop

Dated: 9/6, 2023

DEFENDANT GRAMERCY CARDIAC DIAGNOSTIC SERVICES P.C.

By:_______________________
Klaus Peter Rentrop
President and Sole Owner

WINDELS MARX LANE & MITTENDORF, LLP

By:_______________________
Jeffrey C. Hoffman
156 West 56th Street
New York, New York 10019
212-237-1018
jhoffman@windelsmarx.com
Attorney for Defendants

SO ORDERED:

HON. JESSE M. FURMAN
UNITED STATES DISTRICT JUDGE

Dated: September 18, 2023